O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| VALANDA HARVILLE et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>RICHMAN PROPERTY SERVICES, INC. et al.,<br><br>            Defendants. | Case № 2:24-cv-07832-ODW (SSCx)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND [25]; AND DENYING DEFENDANT'S MOTION TO DISMISS [11]** |

## I.   INTRODUCTION

On August 8, 2024, Plaintiffs Valanda Harville and Kimberly Lee initiated this action against Defendants Richman Property Services, Inc. ("Richman") and DOES 1 through 10 for violation of California's Investigative Consumer Reporting Agencies Act ("ICRAA") in the Superior Court of California.  (Notice Removal ("NOR") Ex. A ("Complaint" or "Compl."), ECF Nos. 1, 1-1.)  On September 13, 2024, Richman removed this action to federal court based on alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  (NOR ¶ 11.)  Plaintiffs now move to remand.  (Mem. P. & A. ISO Mot. Remand ("Motion" or "Mot."), ECF No. 25-1.)  For the reasons below, the

Court **GRANTS** Plaintiffs' Motion and **REMANDS** this action to Los Angeles County Superior Court.[1]

## II. BACKGROUND

In 2023, each Plaintiff completed and submitted a rental application ("Application") to apply for an apartment unit in a building operated by Richman. (Compl. ¶¶ 8, 14.) The Application notified applicants that Richman may screen for criminal background and previous evictions. (*Id.* ¶ 16.) Richman did not provide a process for Plaintiffs to indicate that they wished to receive a copy of any report prepared in connection with their respective Applications, and it did not provide Plaintiffs with "a consent form or disclosure with a box to check" in connection with such reports. (*Id.* ¶ 22.) Richman later processed each Plaintiff's Application and requested investigative consumer reports about each Plaintiff, obtaining at least two such reports about each Plaintiff. (*Id.* ¶¶ 19, 21.) Richman did not provide Plaintiffs a copy of any such reports. (*Id.* ¶ 23.) At least one of the Plaintiffs is a resident of an apartment building Richman operates. (*See* Decl. Theresa Eastwood Davis ISO Opp'n Mot. ("Davis Decl.") ¶¶ 9–10, ECF No. 28-1.)[2]

On August 8, 2024, Plaintiffs filed this lawsuit in the Superior Court of the State of California, County of Los Angeles. (Compl.) In their Complaint, Plaintiffs assert one cause of action for violation of the ICRAA. (*Id.* ¶¶ 26–36.) As relief, Plaintiffs request (1) general, compensatory, and punitive damages; (2) statutory damages; (3) interest; (4) attorneys' fees; (5) equitable relief and restitution; (6) declaratory judgment that each Plaintiff's Application and annual re-certification violates the ICRAA; (6) an injunction enjoining Richman from violating the ICRAA

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Therefore, the Court **VACATES** the hearing scheduled for November 4, 2024, and takes the Motion under submission.

[2] Richman's president declares that Richman "has no record of Plaintiff Kimberly Lee ever completing an application for or residing at [its] properties." (Decl. Davis ¶ 9.) For purposes of this Motion, the Court takes Plaintiffs' allegation that Lee completed such an application as true.

1  or refusing to rent to Plaintiffs; and (7) a writ of mandate and injunction requiring
2  Richman to, among other things, comply with the ICRAA by including in its rental
3  application an option for prospective applicants to receive a copy of any investigative
4  consumer report and, if requested, providing the reports themselves.  (*Id.*, Prayer.)
5  "Plaintiffs expressly limit the total amount of recovery, including statutory damages,
6  attorneys' fees and costs, and [the] cost of injunctive relief not to exceed $74,999."
7  (*Id.*, Prayer ¶ 3.)

8        Richman removed this action to federal court, alleging diversity jurisdiction
9  under 28 U.S.C. § 1332(a).  (NOR ¶ 11.)  Plaintiffs now move to remand this action
10 back to Los Angeles County Superior Court.  (Mot.)  The Motion is fully briefed.
11 (Opp'n Mot. ("Opp'n" or "Opposition"), ECF No. 28; Reply ISO Mot. ("Reply"),
12 ECF No. 30.)  Richman also moves to dismiss this case.  (Mot. Dismiss, ECF No. 11;
13 Opp'n Mot. Dismiss, ECF No. 21; Reply Mot. Dismiss, ECF No. 27.)

### III.   LEGAL STANDARD

      Federal courts are courts of limited jurisdiction and possess only that jurisdiction as authorized by the Constitution and federal statute.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Under 28 U.S.C. § 1441(a), a party may remove a civil action brought in a state court to a district court only if the plaintiff could have originally filed the action in federal court.  Federal district courts have original jurisdiction where an action arises under federal law, or where each plaintiff's citizenship is diverse from each defendant's citizenship (i.e., diversity is "complete"), and the amount in controversy exceeds $75,000.  28 U.S.C. §§ 1331, 1332(a).

      There is a strong presumption that a court is without jurisdiction until affirmatively proven otherwise.  *Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1190 (9th Cir. 1970); *see Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").  When an action is removed from state court, the removing

party bears the burden of demonstrating that removal is proper. *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017). Removal is strictly construed, and any doubt as to removal is to be resolved in favor of remand. *Id.*

## IV. DISCUSSION

Plaintiffs seek to remand the case to state court, asserting that the amount in controversy does not exceed $75,000. (Mot. 8–15.) "Plaintiffs, who are the masters of their complaints," may "stipulat[e] to amounts at issue" "to avoid removal to federal court, and to obtain a remand to state court." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013); *see St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) ("If [a plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.").

Richman agrees that while a plaintiff "can limit the damages and attorney's fees [that plaintiff] seek[s] to $74,999," a plaintiff cannot so limit the cost for a defendant to comply with injunctive relief. (Opp'n 15 (collecting cases).) Here, "Plaintiffs expressly limit the total amount of recovery, including statutory damages, attorneys' fees and costs, and [the] cost of injunctive relief not to exceed $74,999." (Compl., Prayer ¶ 3.) The Court need not decide whether a plaintiff can limit the cost of injunctive and declaratory relief to avoid federal diversity jurisdiction. Even assuming, *arguendo*, that a plaintiff cannot place these limits on such relief, Richman has failed to meet its burden to show that the amount in controversy exceeds $75,000.

### A. Monetary Damages

Plaintiffs limit the "total amount of recovery" alleged in the Complaint to "not exceed $74,999." (*Id.*) Therefore, at most, Plaintiffs' monetary damages are limited to $74,999 for purposes of the Court's jurisdictional analysis. *See, e.g.*, *Standard Fire Ins. Co*, 568 U.S. at 595; *St. Paul Mercury Indemnity Co.*, 303 U.S. at 294;

(Opp'n 15). However, after careful analysis, the Court finds that Richman has shown that Plaintiffs allege, at most, $20,000 in monetary damages.

### 1. *Statutory Damages*

The ICRAA, requires, among other things, any person requesting an "investigative consumer report" to "[p]rovide the consumer a means by which the consumer may indicate on a written form, by means of a box to check, that the consumer wishes to receive a copy" of such report. Cal. Civ. Code § 1786.16(b). The ICRAA provides for a minimum of $10,000 in damages for violations of the statute. *Id.* § 1786.50(a)(1). Richman asserts that Plaintiffs ask for $20,000 in statutory damages for each of the two Plaintiffs, and, therefore, those damages must be aggregated and the amount in controversy is $40,000, (Opp'n 9–10, 19).[3]

"[A]s a general rule, multiple plaintiffs who assert 'separate and distinct' claims in a lawsuit may not aggregate their claims to satisfy the jurisdictional amount." *Bockrath v. Apartment Inv. & Mgmt. Co.*, No. 2:20-cv-04179-CJC (PJWx), 2020 WL 3469265, at *2 (C.D. Cal. June 25, 2020); *see Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013) ("The traditional rule is that multiple plaintiffs who assert separate and distinct claims are precluded from aggregating them to satisfy the amount in controversy requirement."). This anti-aggregation principal "applies to *any* civil case," including representative suits, not just class actions. *Jaimes v. Am. First Fin. LLC*, No. 23-cv-00978-SK, 2023 WL 6783774, at *2 (N.D. Cal. Oct. 12, 2023) (collecting cases) (quoting *Phipps v. Praxair, Inc.*, No. 99-CV-1848 TW (LAB), 1999 WL 1095331, at *5 (S.D Cal. Nov. 12, 1999)).

---

[3] In their Complaint, Plaintiffs allege that they "are each entitled to statutory damages in the amount of $10,000 per investigative consumer report" and that Richman "obtained at least two . . . reports about each of the Plaintiffs." (Compl. ¶ 33.) However, in their Prayer for Relief, Plaintiffs seek "statutory damages . . . on each cause of action . . . in the amount of $10,000 to each Plaintiff." (*Id.*, Prayer ¶ 3.) Because it would not change this Court's ruling if Plaintiffs were seeking $10,000 per report or $10,000 per Plaintiff, the Court uses the higher amount—$10,000 per report and $20,000 per Plaintiff—in its analysis.

In *Snyder v. Harris*, the Supreme Court stated that "[a]ggregation has been permitted only" in two circumstances: "(1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." 394 U.S. 332, 335 (1969). To determine the second exception's character of interest, "courts look to the source of plaintiffs' claims. If the claims are derived from rights that they hold in group status, then the claims are common and undivided. If not, the claims are separate and distinct." *Urbino*, 726 F.3d at 1122 (internal quotation marks omitted). "But simply because claims may have questions of fact and law common to the group does not mean they have a common and undivided interest." *Id.* (internal quotation marks omitted).

In their Complaint, Plaintiffs assert they are pursuing this action "acting for themselves and also as . . . private attorney general[s] seeking to redress wrongs and protect the rights of other building tenants so that the continuing illegal practices in violation of the Civil Code permanently cease." (Compl. ¶ 5.) Richman relies on this assertion to argue that damages should be aggregated. (Opp'n 19.)

However, Plaintiffs also allege that "each" Plaintiff is "entitled to statutory damages" in connection with Defendant obtaining "investigat[iv]e consumer reports about *each* of the Plaintiffs." (Compl. ¶ 33 (emphasis added).) Thus, while Plaintiffs may be seeking injunctive relief on behalf of others, the monetary relief Plaintiffs seek—$10,000 per report per Plaintiff—are separate and distinct claims for each Plaintiff.

Richman asserts that Plaintiffs' purported strategy to file multiple suits with fewer plaintiffs instead of one suit with all plaintiffs "demonstrates an understanding that the claims will be aggregated." (Opp'n 19 n.8.) Even if true, at most, this demonstrates Plaintiffs' view of the law, not the state of the law. Moreover, the fact that multiple consumers have filed separate lawsuits, and each has alleged violations in connection with each consumer's respective reports, supports that these claims are

distinct and not undivided. *See, e.g.*, *Completo v. Richman Prop. Servs., Inc.*, No. 2:24-cv-04233-ODW (SSCx) (fourteen plaintiffs); *Calloway v. Richman Prop. Servs., Inc.*, No. 2:24-cv-04232-ODW (SSCx) (seven plaintiffs); *Alvarado v. Richman Prop. Servs., Inc.*, No. 8:24-cv-02008-ODW (SSCx) (two plaintiffs); *Ruffins v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08288-ODW (SSCx) (two plaintiffs); *Lee v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08286-ODW (SSCx) (two plaintiffs); *Murph v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08545-ODW (SSCx) (two plaintiffs); *Hernandez v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08242-ODW (SSCx) (two plaintiffs).

Richman also fails to cite even one case that supports aggregation here. (*See* Opp'n 6, 19.) Therefore, Richman fails to meet its burden to show that Plaintiffs' claims should be aggregated. Because each Plaintiff seeks $10,000 of statutory damages per investigative consumer report, and each Plaintiff alleges that Defendant "obtained at least two" such reports per Plaintiff, (Compl. ¶ 33), Plaintiffs' claim for statutory damages supports only $20,000 amount in controversy.

### 2. Attorneys' Fees

Under the ICRAA, a plaintiff may recover "the costs of the action together with reasonable attorney's fees as determined by the court." Cal. Civ. Code § 1786.50(a)(2). The Ninth Circuit has held that attorneys' fees awarded under fee-shifting statutes can be considered in assessing the jurisdictional threshold. *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649 (9th Cir. 2016). However, "a removing defendant" must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence," and must "make this showing with summary-judgment-type evidence." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018). As such, a "district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof." *Id.* Although a defendant can "meet its burden to establish a reasonable estimate of attorneys' fees by

1 identifying awards in other cases, those cases must be similar enough to the case at
2 hand that the court can conclude that it is more likely than not that the plaintiff may
3 incur a similar fee award." *Kaplan v. BMW of N. Am., LLC*, No. 21-cv-857 TWR
4 (AGS), 2021 WL 4352340, at *6 (S.D. Cal. Sept. 24, 2021).

Here, Richman fails to meet its burden with respect to attorneys' fees. Richman cites two cases to support its contention that attorneys' fees should be included in the amount in controversy calculation. (*See* Opp'n 12–13.) First, Richman cites *Elmi v. Related Mgmt. Co., L.P.*, No. G061379, 2023 WL 6210756 (Cal. Ct. App. Sept. 25, 2023), as an example of an ICRAA case where a plaintiff sought more than $300,000 in attorneys' fees. (*See* Opp'n 12.) However, there, the appellate court did not award $300,000 in attorneys' fees, but instead affirmed the trial court's $19,440 award. *Elmi*, 2023 WL 6210756, at 1, 4. Second, Richman cites *Smith v. Abode Cmtys., LLC*, No. 20STCV11372, 2022 WL 17752962 (Cal. Super. Oct. 11, 2022), in which a court awarded Plaintiffs' counsel $147,690 in an ICRAA case it won after a jury trial. (*See* Opp'n 11–12.) However, despite that case concerning an ICRAA claim litigated by Plaintiffs' counsel, Richman makes no effort to explain how that case is comparable to this one such that the Court "can conclude that it is more likely than not that the plaintiff may incur a similar fee award." *Kaplan*, 2021 WL 4352340, at *6.

Richman also submitted a declaration from one of its attorneys stating that "[s]ignificant fees have been incurred so far" and "based on [his] experience, it is unlikely this case will settle quickly." (Decl. Benjamin E. Strauss ¶ 2, ECF No. 28-4.) This is not enough for Richman to meet its burden. In fact, attorneys' fees may be less here than the typical case—including *Smith*—because Plaintiffs' counsel is representing numerous Plaintiffs in nearly identical cases against Richman where the parties have filed nearly identical motions.[4] This duplication of work would more likely than not lead to a reduced attorneys' fees award on a per-Plaintiff basis.

---

[4] *See, e.g.*, Mot. Remand, *Completo v. Richman Prop. Servs.*, No. 2:24-cv-04233-ODW (SSCx), ECF No. 16; Mot. Remand, *Calloway v. Richman Prop. Servs., Inc.*, No. 2:24-cv-04232-ODW (SSCx), ECF No. 20; Mot. Remand, *Alvarado v. Richman Prop. Servs., Inc.*, No. 8:24-cv-02008-

Because the removal statute is strictly construed, and all doubts are resolved in favor of remand, the Court finds that Richman fails to submit adequate evidence substantiating any attorneys' fees. Accordingly, the Court does not consider attorneys' fees in its amount in controversy calculation.

### 3. Other Damages

Richman references the alleged punitive damages. (Opp'n 5–7, 11, 17.) Richman's bare assertion that the Court should consider these damages "provides the Court with no factual or legal basis by which to determine the likelihood" of such an award in this case. *Banuelos v. Colonial Life & Acc. Ins. Co.*, No. 2:11-cv-08955-JHN (AGRx), 2011 WL 6106518, at *2 (C.D. Cal. Dec. 8, 2011); *Dressler v. Hartford Fin. Servs. Grp., Inc.*, No. 2:14-cv-02134-MMM (MANx), 2014 WL 12560796, at *7 (C.D. Cal. June 19, 2014) ("The mere fact that a plaintiff seeks punitive damages, however, is not sufficient, standing alone, to establish that the amount in controversy exceeds the jurisdictional threshold."). Therefore, inclusion of these damages "in the amount in controversy would be improper." *Hulse v. Bethesda Lutheran Cmtys., Inc.*, No. 5:18-cv-00262-FMO (KKx), 2018 WL 1033223, at *3 (C.D. Cal. Feb. 23, 2018). For the same reasons, the Court cannot consider the other purported monetary damages, including compensatory, general, emotional distress damages, and invasion of privacy damages. (*See* Opp'n 7, 10.)

### B. Non-Monetary Relief

Having found that Richman has shown that the amount in controversy for Plaintiffs' pleaded monetary relief is $20,000, the Court turns to Plaintiffs' requested non-monetary relief.

---

ODW (SSCx), ECF No. 19; Mot. Dismiss, *Ruffins v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08288-ODW (SSCx), ECF No. 9; Mot. Dismiss, *Lee v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08286-ODW (SSCx), ECF No. 11; Mot. Dismiss, *Murph v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08545-ODW (SSCx), ECF No. 10; Mot. Dismiss, *Hernandez v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08242-ODW (SSCx), ECF No. 9.

### 1. *Injunctive Relief*

Richman asserts that the cost of Plaintiffs' requested injunctive relief "would be significant," because it would require it to "overhaul" the "entire application and leasing processes for all 19 buildings that it operates in California." (Opp'n 14.) In a declaration, Richman's president states that she "cannot yet determine the cost of the requested injunction," but provides "one data point for assessing the vast cost"—Richman's leasing and application software contract costs more than $42,000 per year. (Davis Decl. ¶ 4.) Richman's president also asserts that Richman will "need to create training materials and deliver training to over 40 California employees on these new systems." (*Id.*)

These assertions do not support an amount in controversy for compliance with injunctive relief. First, Richman does not clarify how the cost of its leasing and application software relates to the costs that would be incurred to comply with a hypothetical injunction requiring changes to its rental applications. Second, Richman fails to explain why such compliance would require training for its employees or what "these new systems" entail. In its motion to dismiss, Richman characterizes its purported violation as "allegedly omitting a checkbox." (Mot. Dismiss 21.) The evidence submitted in support of its Opposition does not suggest that adding a simple "checkbox" to its rental application would cost Richman significant sums of money. Even if it did, Richman provides no basis for the Court to determine what that amount should be for purposes of the jurisdictional analysis.

### 2. *Declaratory Relief*

Richman contends that the cost of complying with Plaintiffs' requested declaratory relief satisfies the amount in controversy. (*See* Opp'n 6–7.) "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Corral*, 878 F.3d at 775; *accord Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). The "object of the litigation" in this case is a declaration that rental applications and

1 annual re-certifications violate the ICRAA. (*See* Compl. ¶ 59, Prayer ¶¶ 7–8).
2 Richman asserts that declaratory relief, in conjunction with equitable relief and
3 restitution, could cost it $33,090 for Plaintiff Harville (the rent due throughout
4 Harville's lease).[5] (Opp'n 16; *see* Davis Decl. ¶ 10.) The Court cannot credit this
5 amount because the rental *agreements* are not the "object of the litigation."

6 Plaintiffs seek a declaration that their "Rental Application and the annual
7 re-certification . . . violate the ICRAA." (Compl., Prayer ¶ 8.) Richman asserts that,
8 in the Complaint, Plaintiffs "seek to declare illegal and void the" Applications and re-
9 certifications. (Opp'n 16.) Plaintiffs seek no such relief. (*See generally* Compl.)
10 Instead, they ask for "declaratory judgment that the" Plaintiffs' Applications and re-
11 certifications "violate the ICRAA."[6] (*Id.*, Prayer ¶ 8.) In any event, nowhere in the
12 Complaint do Plaintiffs request a declaration that their rental agreements are void.
13 (*See generally* Compl.) Richman has not shown how voiding the rental applications,
14 but not the rental agreements, would cost it any money or lead to voidance of the
15 rental agreements themselves.

16 For the same reasons, the Court cannot credit Richman's speculative claim that
17 voiding the rental agreements for units "supplemented by tax credits and other
18 financial benefits provided by the State of California and [the] federal
19 government . . . . would cause a chain reaction resulting in millions of dollars in harm
20 to Defendant."[7] (Opp'n 17–18.) Moreover, the amount in controversy "is determined
21 by the amount involved in the particular case, and not by any contingent loss either

---

[5] As noted, Richman's president declares that Richman "has no record of Plaintiff Kimberly Lee ever completing an application for or residing at [its] properties." (Decl. Davis ¶ 9.)

[6] Other plaintiffs in separate cases filed by Plaintiffs' counsel asked for a declaration that those plaintiffs' rental applications are illegal and wholly void. *See, e.g.*, Complaint, Prayer ¶ 8, *Completo v. Richman Prop. Servs.*, No. 2:24-cv-04233-ODW (SSCx), ECF No. 1-1; Complaint, Prayer ¶ 8, *Calloway v. Richman Prop. Servs., Inc.*, No. 2:24-cv-04232-ODW (SSCx), ECF No. 1-1. Richman appears to have failed to adjust its Opposition to reflect the Complaint filed in *this* case.

[7] Once again, Richman appears to have failed to tailor its Opposition to the Complaint filed in *this* case. Richman does not allege either Plaintiff rents an affordable house unit from Richman. (*See* Opp'n 17–18.)

one of the parties may sustain by the probative effect of the judgment." *New England Mortg. Sec. Co. v. Gay*, 145 U.S. 123, 130 (1892); *see WBI, Inc. v. Zurich Am. Ins. Co.*, No. 2:15-cv-04852-MWF (AFMx), 2016 WL 4528956, at *3 (C.D. Cal. Aug. 30, 2016) ("[W]hatever the collateral effects a decree or judgment might have . . . on the rights or interests of the parties to this action or third parties, these effects cannot be taken into account in calculating the amount in controversy. (internal quotation marks omitted))." Even if voiding certain rental agreements could possibly lead to Richman losing tax credits, Plaintiffs do not request this relief and it is therefore not the "object of the litigation."

Therefore, for purposes of the jurisdictional analysis, Richman has proven $20,000 in controversy. Even assuming the requested monetary relief is $74,999, Richman fails prove that Plaintiffs' requested non-monetary relief should be credited to the amount in controversy. Therefore, the amount in controversy is below the $75,000 threshold required for diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Remand, (ECF No. 25), and **REMANDS** this case to the Superior Court of California, County of Los Angeles, 111 North Hill Street, Los Angeles, CA 90012, Case No. 24STCV20064. Consequently, the Court **DENIES** Richman's Motion to Dismiss, (ECF No. 11), as moot.

**IT IS SO ORDERED.**

October 22, 2024

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**